**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **LISA BATTLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. _____** |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **UNITED PARCEL SERVICE** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## AMENDED COMPLAINT

Plaintiff **Lisa Battle** ("Plaintiff" or "Ms. Battle") brings this amended complaint[1] for relief and damages against Defendant **United Parcel Service Inc.** ("Defendant" or "UPS") based on the following factual allegations and causes of action.

## NATURE OF THE ACTION

1.      This is an action brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended through the Pregnancy Discrimination Act, 42 U.S.C.A. § 2000e(k), and the Americans with Disabilities Act, 42 U.S.C.A. §

---

[1] Plaintiff files this amended complaint by right under Federal Rule of Civil Procedure 15 to correct a factual omission and error in the original complaint (Doc. 1).

12112(a) ("ADA"), to correct unlawful employment practices by UPS on the basis of pregnancy and pregnancy-related medical conditions.  Within days of being denied permission to leave her shift while experiencing severe pain and bleeding, Ms. Battle experienced a miscarriage.

2.      Ms. Battle alleges that ever since she filed internal complaints of discrimination and a charge with the Equal Employment Opportunity Commission ("EEOC"), she has been subjected to continuing retaliatory mistreatment in violation of Title VII of the Civil Rights Act, 42 U.S.C.A. § 2000e-3(a) and the ADA, 42 U.S.C.A. § 12203(a).

3.      To remedy UPS's unlawful conduct, Ms. Battle seeks economic compensatory damages for mental anguish and emotional distress; lost wages, as well as her attorneys' fees and costs of litigation.

## **THE PARTIES**

4.      Ms. Battle resides in Fulton County in the state of Georgia. During the time of the events alleged in this complaint, she was employed at the UPS facility at 1240 Toffie Terrace, Hapeville, Georgia 30354.

5.      At times relevant to this complaint, Ms. Battle suffered from a pregnancy-related condition and sought a temporary reasonable accommodation for her condition.

6.      UPS is a covered entity under the ADA, 42 U.S.C.A. § 12111 *et seq.*, and Title VII, 42 U.S.C.A. §§ 2000e(b), (g), and (h).

## **PERSONAL JURISDICTION**

7.      UPS may be served with proper process through its registered agent on record with the Georgia Secretary of State: CSC of Cobb County, Inc., 192 Anderson St. SE, Suite 125, Marietta, Georgia 30060.

## **SUBJECT-MATTER JURISDICTION AND VENUE**

8.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

9.      Venue is proper in this district and division under 28 U.S.C.A. §§ 1391(b)(1)-(2), as Defendant resides in and conducts business in, and the alleged unlawful acts occurred in, this judicial district and division.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

10.      On April 28, 2023, Plaintiff filed charges of sex and disability discrimination and retaliation with the EEOC, Charge No. 410-2023-06368.  A subsequent amended charge was filed on May 9, 2023.  A copy is attached as Exhibit A.

11.     Plaintiff subsequently received a right-to-sue letter from the EEOC on January 11, 2024.  A copy is attached as Exhibit B.

12.     Plaintiff timely files her claims within 90 days of receiving her right-to-sue letter.

## <u>FACTUAL ALLEGATIONS</u>

13.     Lisa Battle is employed as an aircraft and container systems loader for UPS's airport hub in Fulton County, Georgia.

14.     Ms. Battle learned in December 2022 that she was in the early weeks of pregnancy.

15.     In the latter part of 2022 and early in 2023, UPS's airport loading operation experienced constant issues with understaffed shifts.  Despite the reduced labor force, UPS attempted to maintain its usual levels of functionality at the hub, at the risk of safety and efficiency.

16.     On January 6, 2023, an undermanned loading team lost control of a loading canister, sending the item barreling toward Ms. Battle and other crew members.

17.     In an effort to avoid being struck, Ms. Battle braced to stop the canister.  She immediately felt a sharp radiating pain in her lower abdomen.

18.     The pain persisted and within 15 to 30 minutes, Ms. Battle noticed that blood was saturating her pants leg, a classic sign of crisis for a pregnant woman.  She immediately asked her shift supervisor Danny Andrews for permission to interrupt her shift to go to the bathroom to examine herself or to seek help.

19.     When Andrews told her that he could not release her from the shift, Ms. Battle informed him that she was pregnant and that she was experiencing bleeding.

20.     Andrews still insisted to Ms. Battle that she could not leave her shift. When she implored him to let her leave, Andrews radioed his shift manager Tania Johnson to say that Ms. Battle was in distress and bleeding, to which Johnson replied, in earshot of Ms. Battle, "If Lisa leaves her position, it is job abandonment."

21.     Ms. Battle, fearing for her job, felt she had no choice but to remain at her station while in intense pain for over an hour.

22.     The general practice at UPS's Atlanta airport hub is to permit breaks when workers are experiencing medical issues.  UPS's employee handbook and collective bargaining agreements are construed to permit extra bathroom breaks when workers require them.

23.     On or about January 8, 2023, Ms. Battle learned during a visit to an urgent care clinic that she had miscarried.

24.     When Ms. Battle returned to UPS on January 10, 2023, while trying to work, she experienced a sudden panic attack and could not continue.  Andrews notified Johnson, who in turn confronted Ms. Battle about stopping her work during a shift.

25.     Ms. Battle told Johnson that she had miscarried after being refused authorization to leave her shift, which caused Johnson to launch into a tirade, telling Ms. Battle at one point that "you don't deserve a baby."

26.     At one point, Johnson became inflamed to the extent that several onlooking employees had to restrain her.

27.     On January 10, Ms. Battle filed a grievance relating that Ms. Johnson was bullying her and had refused to let her leave her shift.  On January 11, Ms. Battle lodged a formal complaint with UPS's internal hotline, in which she alleged bullying and misconduct, based on the refusal to let her leave her shift during a pregnancy related medical crisis.

28.     While at work on January 11, Ms. Battle became extremely anxious and nauseated and was again challenged by Johnson.  This time Johnson accused

her of faking illness and told her that she could "row her boat back home," which

Ms. Battle took as a bigoted reference to her Dominican roots.

29.     Ms. Battle took several days of personal leave time to calm down after

the episodes of the previous week.  On January 20, 2023, Ms. Battle received a

written notice that her seniority and job were in danger of being terminated

because she was absent without authorized leave.

30.     On January 27, a meeting was held to review the grievance and the

termination notice. Union stewards and human resources officials attended, as did

District Manager Doris McKinney. Ms. Battle disputed the claim that she was on

an unauthorized leave and stated during the meeting that she intended to file a

charge of discrimination with the EEOC as well as an eventual lawsuit.

31.     McKinney announced during the meeting that Ms. Battle's

termination notice would be withdrawn.  But the grievance was not sustained.

32.     Johnson took an unrelated medical leave in late January to February

2023.  But beginning in February 2023, and continuing after her filing of EEOC

charges in April and May 2023, Ms. Battle began to experience a series of adverse

events.

33.     First, for the next eight months, Ms. Battle was frequently denied

opportunities to stay late to work extra hours.  At UPS, loading and manual labor

employees are routinely offered chances to boost their paycheck through expanding their shifts.  Instead, Ms. Battle was frequently told there was no work available and directed to leave the premises at her shift's end.

34.    Ms. Battle was told by her shift supervisor Danny Andrews that he had been directed by management to "keep an eye on her," which she took as an active effort to find reasons to fire her.

35.    In addition, Ms. Battle began to be denied applications to test for certifications for other, better-paying roles, such as what UPS refers to as "marshaling" (the process of directing cargo planes on the runway) and directing the "push back" machine that detaches planes from the cargo dock.

36.    In the summer of 2023, Ms. Battle sought to renew her certification for driving canisters to cargo planes for loading.  Her application was denied with no explanation, which cost her one more route to bolster her income with additional work.

37.    During UPS's peak holiday season from November to December, Ms. Battle was afforded chances for extra shifts.  But beginning in mid-January 2024 (within days of the EEOC issuing her a right-to-sue letter), when the aircraft and container-loading session put in place a rotation list for extra shift assignments, the single employee with seniority who was left off the list was Ms. Battle.

## CAUSES OF ACTION

## COUNT I

### Disability discrimination under the Americans with Disabilities Act, 42 U.S.C.A. § 12112(a)

38.     Plaintiff incorporates by reference paragraphs 1–37 of this complaint as though set forth fully and separately herein.

39.     In January 2023, Plaintiff suffered a medical emergency that consisted of pregnancy-related complications and sought an accommodation in the form of a temporary break in her shift.

40.     Plaintiff's pregnancy-related complications were ADA qualifying conditions in that they damaged her reproductive functions to the point that they likely caused a miscarriage.

41.     UPS denied Plaintiff the reasonable accommodation she sought, and as a result of Defendant's disability-based discrimination, Plaintiff has suffered compensatory damages related to mental anguish, emotional distress, and humiliation.   Plaintiff has also been made to bear the costs of litigation and attorneys' fees.

## COUNT II

### Discrimination under the Pregnancy Discrimination Act, 42 U.S.C.A. § 2000e(k)

42.     Plaintiff incorporates by reference paragraphs 1–37 of this complaint as though set forth fully and separately herein.

43.     UPS refused to grant Plaintiff an accommodation in the form of a temporary break from her shift after she experienced a medical emergency that likely led to a miscarriage.

44.     UPS's failure to accommodate Plaintiff during a pregnancy-related medical emergency violated the Pregnancy Discrimination Act, in that UPS ordinarily permits employees to take extra bathroom or medical breaks.

45.     As a result of UPS's discriminatory conduct, Plaintiff has suffered noneconomic compensatory damages related to mental anguish, emotional distress, and humiliation.  Plaintiff has also been made to bear the costs of litigation and attorneys' fees.

## COUNT III

### Retaliatory mistreatment under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-3(a)

46.     Plaintiff incorporates by reference paragraphs 1–37 of this complaint as though set forth fully and separately herein.

47.    Plaintiff engaged in protected activity under Title VII in that she complained of gender, i.e., pregnancy-based discrimination through UPS's internal process and through the filing of charges of discrimination with the Equal Employment Opportunity Commission.

48.    Based on Plaintiff's protected activity, UPS has continued to restrict Plaintiff's access to opportunities to earn extra income and work certifications.

49.    UPS's restrictions on Plaintiff would have prevented a reasonable worker from making a charge of gender discrimination or opposing gender-based discriminatory conduct and therefore constitutes retaliatory mistreatment.

50.    As a result of UPS's retaliatory conduct, Plaintiff has suffered economic damages in the form of lost wages. Plaintiff has also been made to bear the costs of litigation and attorneys' fees.

## COUNT IV

### Retaliatory mistreatment under the ADA, 42 U.S.C.A. § 12203(a)

51.    Plaintiff incorporates by reference paragraphs 1–37 of this complaint as though set forth fully and separately herein.

52.    Plaintiff engaged in protected activity under the ADA in that she complained of disability-based discrimination through UPS's internal process and through the filing of charges of discrimination with the Equal Employment Opportunity Commission.

53.     Based on Plaintiff's protected activity, UPS has continued to restrict Plaintiff's access to opportunities to earn extra income and work certifications.

54.     UPS's restrictions on Plaintiff would have prevented a reasonable worker from making a charge of disability discrimination or opposing disability-based discriminatory conduct and therefore constitutes retaliatory mistreatment.

55.     As a result of UPS's retaliatory conduct, Plaintiff has suffered economic damages in the form of lost wages.  Plaintiff has also been made to bear the costs of litigation and attorneys' fees.

## **PRAYER FOR RELIEF**

Wherefore, based on the above-stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

A. Lost economic opportunities, including wages and front pay;

B. Compensatory damages to the full extent allowed by law;

C. Punitive damages;

D. Attorneys' fees and costs of litigation;

E. Pre-judgment and post-judgment interest at the highest lawful rate; and

F. Such other equitable and monetary relief as the Court deems just and proper.

Respectfully submitted the 11th day of April, 2024.

**HKM Employment Attorneys LLP**

*s/Artur Davis*[2]
Artur Davis[2]
ASB-3672-D56A
2024 3rd Ave. North, Suite 212
Birmingham, Alabama 35203
Direct: 205-881-0935
adavis@hkm.com

*s/Jermaine "Jay" Walker*
Jermaine "Jay" Walker
GA Bar No. 142044
3344 Peachtree Rd. NE, Suite 800
Office No. #35
Atlanta, Georgia 30326
Direct: 404-301-4020
jwalker@hkm.com

**Attorneys for Plaintiff Lisa Battle**

---

[2]Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Mr. Davis is licensed in the state of Alabama and the District of Columbia.